IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FARUK IBRAHIM, #298-608,    *
    Petitioner,
v.            *  CIVIL ACTION NO. PJM-05-1418

JOSEPH P. SACCHET, et al .    *
    Respondents.

          \*\*\*\*\*\*

## MEMORANDUM OPINION

On May 23, 2005, the Clerk received for filing Petitioner Faruk Ibrahim's 28 U.S.C. § 2254 attack on his 2000 conviction in Baltimore County Circuit Court for second degree rape. Paper No. 1.  Respondents have filed an Answer to the Petition and Petitioner has filed a Reply.  Paper Nos. 4 and 5.  After consideration of the pleadings and exhibits, the Court sees no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(d) & (e)(2).  For reasons to follow, the Petition is hereby denied and dismissed with prejudice.

### I. Procedural History

On October 24-27, 2000, Petitioner was tried before a jury in the Circuit Court for Baltimore County, the Honorable J. William Hinkel presiding.  Paper No. 4, Ex. 1.  The facts adduced at trial as recounted by the Court of Special Appeals of Maryland are as follows:

> Carole Hillier suffers from dystopia, a muscle disease, which afflicted her at the age of fifteen.  While she is able to bathe and dress herself, an aide prepares her meals and cleans her apartment.  After four brain surgeries, Hillier lost her ability to speak and for security and assistance, her apartment is equipped with emergency cords, which she could pull to summon assistance.

> Hillier's boyfriend was Howard Poteet, a quadriplegic.  Appellant was one of Poteet's three caretakers.  On February 15, 2000, appellant brought Poteet for a visit to Hillier's residence; appellant entered Hillier's apartment to obtain a wheelchair for Poteet.  According to Hillier, appellant threw her on a sofa and put his penis in her vagina, he removed his penis to ejaculate.  She did not consent to sex with appellant and she "yelled." At trial, both parties stipulated that the sofa cushion

recovered from Hillier's apartment was tested and the semen on the cushion was identified.  Deoxyribonucleic acid (DNA) testing showed that the semen stain and the known blood of appellant matched all six genetic markers and the probability of selecting an unrelated individual with the same genetic markers is one in 5,900 in the African-American population.

Hillier did not tell anyone about the attack for several days, because appellant said that he would kill her and Poteet if she told anyone.  She did not mention the threat to the investigating detectives but said that she did not immediately report the rape because she was scared.  Following the alleged attack on February 15, 2000, appellant, accompanied by another man, brought Poteet to Hillier's apartment.  After appellant put Poteet in bed, appellant reputedly "yelled out" to his friend that Hillier was a "good fuck."  Poteet testified that, on February 15, 2000, he waited with appellant's cousin in the car, while appellant obtained a wheelchair from Hillier's apartment.  After Poteet was taken to Hillier's apartment, he said he heard appellant's cousin ask Hillier if she wanted to "fuck."  Hillier told Poteet about the alleged rape a few days later.  Poteet did not contact the police, because he was not sure whether Hillier was telling the truth.

Soraya Sina, a nurse trained to conduct sexual assault examinations, examined Hillier on February 19, 2000.  Sina observed a "crescent-shaped little injury," a bruise, and broken blood vessels in Hillier's genital area, which, she testified, had occurred "within a week."

*****

Detective Joan Wheeler-Felts investigated the case.  She testified that she obtained three addresses for appellant from Progress Unlimited.  She also obtained a telephone number from Hillier's mother and a telephone number from which appellant had called them.  From the location of those telephones, the detective determined that appellant may have been working a dry cleaner in the area.  According to Detective Wheeler-Felts, on February 21, 2000, she called the dry cleaning shop and asked for "Faruk."  She recalled her conversation with the man who then answered the telephone:

> They [sic] said, Yeah [sic].  And they [sic] said, Who [sic] is this?  And I said, It's [sic] Jessie.  And he said, Jessie?  They [sic] questioned me, and I kind of got excited because that was him.  So while I was trying to get my radio and everything, he hung up the phone when I didn't answer him back.  I got on the radio immediately and called the detective that was in the general area to let him know to get over to the dry cleaners [sic] as soon as possible.

The detective received a call on the telephone she had just used.  She answered the phone "'CID,' Detective Wheeler-Felts," and a male voice asked what

"CID" is: when she replied that "CID" means Criminal Investigative Division, the caller hung up.

Detective James Bonsall testified that, on February 21, 2000, pursuant to instructions from Detective Wheeler-Felts, he went to a dry cleaner and asked for appellant. The proprietor went to the back of the establishment but returned without appellant. Detective Bonsall later determined that Osman Ibrahim, appellant's brother, was employed at the Ramada Inn on Security Boulevard and actually resided in one of two rooms he rented at the hotel. Appellant stayed with his brother at the hotel, beginning on February 19, 2000.

After both sides presented their cases, appellant objected to the giving of a flight instruction to the jury. In respect to appellant's argument, the State argued;

> Your honor, I believe the State has generated sufficient evidence to leave them to draw the circumstantial inference that there is a consciousness of guilt from the [appellant]'s behavior. On the 19th he is advised that he is going to be placed on suspension because of an allegation with Carole Hillier. He is enough aware of that to at least on two occasions call the Hillier's home. Thereafter, his own family indicates that all contact is lost with him and that indeed he had been a regular visitor with his mother and uncle and that all that contact is lost thereafter. Efforts to meet the [appellant] , find the [appellant], locate him are met without any success when the [appellant's] family has been aiding the State in locating the [appellant]. Again, circumstance is that the [appellant] is intentionally keeping himself secreted. Then the evidence is he's in a motel room in his brother's name from the day the offense is disclosed to him. Then going back to the connection fo the dry-cleaner [sic], the phone number to Ms. Hillier and the [appellant]'s leaving, yes, he could have left that dry-cleaner [sic] for any reason. It could have an innocent reason or it could have been a flight for consciousness of guilt. That's a determination the jury is entitled to make...

Paper No. 4, Ex. 10 at pp. 1-3; 10-13.

On October 27, 2000, the jury returned its verdict finding Petitioner guilty of second degree rape. Paper No. 4, Ex. 6 at pp. 7-8. On December 18, 2000, Judge Hinkel sentenced Petitioner to fifteen years in prison. *Id.*, Ex. 7 at p. 11.

On appeal to the Court of Special Appeals of Maryland, Petitioner raised two issues: (1) the trial court erred in refusing to admit appellant's excited utterance; and (2) the trial court erred in

giving a flight instruction.  *Id*., Ex. 8. In an unreported opinion filed on November 5, 2001, the Court of Special Appeals of Maryland affirmed Petitioner's convictions. *Id*., Ex. 10. A petition for writ of certiorari, raising the same contentions of error,  was filed and subsequently denied by the Court of Appeals of Maryland on February 7, 2002.  *Id*., Exs. 11 & 12.

On December 31, 2002, Petitioner filed for post-conviction review in the Circuit Court for Baltimore County.  *Id*., Ex. 1. On April 28, 2004, a post-conviction hearing was held before Baltimore County Circuit Court Judge John Grason Turnbull, II.  *Id*.  Judge Turnbull denied the petition.  *Id*., Ex. 15.

Petitioner filed an application for leave to appeal in the Court of Special Appeals, alleging that: (1) the post conviction court "failed to set forth the reasons for denying the claims with sufficient particularity specifically, No Ruling was made on expert testimony presented at the hearing," and (2) even if none of the specific allegations of ineffective assistance warranted a new trial, he was entitled to relief based on the cumulative effect of his trial counsel's errors.  *Id*. Ex. 16. On March 21, 2005, the Court of Special Appeals summarily denied the application for leave to appeal.  *Id*., Ex. 17.

Petitioner filed this § 2254 Petition on May 23, 2005, alleging that his convictions should be overturned based upon the cumulative effect of the ineffective assistance of trial counsel.  Paper No. 1.  He further contends that his trial attorney was ineffective because he "failed to object to the flight instruction after it was read to the jury."  *Id*.

## II. Threshold Considerations

### A.  Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court.   This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals.  Petitioner no longer has direct appeal or post-conviction remedies available in connection with the claims raised before this Court.  He has exhausted the claims presented here.

## B. Statute of Limitations

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

## C.  Procedural Default

There is no contention that any of Petitioner's claims have been procedurally defaulted.

### III.  Standard for § 2254 Review

Because this Petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001).   AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *See Bell v. Cone*, 535 U.S. 685, 693 (2002).  Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*). In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not

6

be overturned on factual grounds unless objectively unreasonable in light of the evidence presented

in the state court proceeding.   *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

With these standards in mind, the court will address the merits of Petitioner's claims.

**A.      Petitioner's Sixth Amendment Claim**

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466

U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell

below an objective standard of reasonableness," and (2) that counsel's deficient performance

prejudiced the defendant. *Id*. at 688, 692.  "The benchmark for judging any claim of ineffectiveness

must be whether counsel's conduct so undermined the proper functioning of the adversarial process

that the trial cannot be relied on as having produced a just result." *Id*. at 686.  The ultimate focus of

the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being

challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of

reasonableness, a court must consider "whether counsel's assistance was reasonable considering all

the circumstances." *Id*. at 688.   In its analysis, a court must be "highly deferential," and "must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal

quotations omitted).   A court must not use the benefit of hindsight to second-guess strategic

decisions made by counsel unless they were unreasonable.  *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the

outcome of the proceeding would have been different, but rather that there is a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694.   Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

**1.     Cumulative Error:**

Petitioner maintains that "numerous Non-deficient error[s] may cumulatively amount to a deficiency, or Numerous Non-prejudicial deficiency may cumulatively cause prejudice." Paper No. 5 and *See* Paper No. 1.   In support of his argument, Petitioner reiterates his eight allegations of ineffective assistance rejected by the state post conviction court.   Specifically, Petitioner contends that trial counsel erred in failing to: (1) object or respond to the testimony of the "SAFE Nurse"; (2) seek removal of a juror; (3) object to prejudicial testimony of a witness; (4) object to improper jury instructions; (5) object to prejudicial closing argument; (6) advise Petitioner to testify; (7) challenge the sufficiency of the evidence; and (8) object to the flight instruction.   Paper No. 1.   The post conviction court, after setting out the proper standard to apply under *Strickland*, examined each of Petitioner's individual claims and rejected each in turn, finding that: (1)  trial counsel presented a vigorous and thorough defense of Petitioner at trial; (2) there was no basis for seeking to remove the juror in question; (3) the testimony of the witness to which Petitioner objected was not prejudicial; (4) there was no error in any of the instructions given and, accordingly, it was not improper for trial counsel to fail to object to same; (5) there was no error in trial counsels' failure to object to the prosecutor's comments regarding the defense's failure to call Petitioner's cousin as a witness; (6) Petitioner knowingly and voluntarily waived his right to testify; (7) contrary to Petitioner's contention, trial counsel did argue that the evidence was insufficient to sustain the conviction; and (8) evidence of flight was adduced at trial and accordingly it was not improper for trial counsel to

fail to object to the jury instruction. *Id.*   Additionally, the post conviction court addressed Petitioner's claim regarding the cumulative effect of the foregoing claims of error, holding, "Petitioner also alleges that these alleged errors by his trial counsel, when taken as a whole, serve to constitute ineffective assistance of counsel. This Court disagrees with that alternative allegation by the Petitioner." *Id.*

Claims of ineffective assistance must be reviewed individually, not collectively. *See Fisher v. Angelone,* 163 F.3d 835, 852 (4th Cir. 1998). Petitioner contends that the foregoing allegations of error, considered cumulatively, were tantamount to a denial of a fair trial.  This claim does not warrant habeas relief.  Because none of the issues raised by Petitioner could be considered error, he cannot string them together in hopes of forming a constitutional violation. *Id.* at 852-53 (noting that with respect to claims of attorney error, the cumulative-error analysis appraises only the effect of matters actually determined to be constitutional error and not the cumulative effect of all matters deemed deficient).   Having examined the post-conviction court's ruling as well as having independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of  trial counsel's allegedly deficient performance, Petitioner has not demonstrated that counsel's performance was deficient or that he was prejudiced by the conduct of trial counsel.  28 U.S.C. § 2254(d).  *See Stamper v.  Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing.").  Accordingly,  the Court sees no reason to overturn Judge Turnbull's decision which does not involve an unreasonable application of *Strickland* and satisfies the  §2254(d) standard of review.  The post conviction court's decision shall not be disturbed.

**2.      Failure to renew objection to flight instruction**

Petitioner contends that trial counsel's failure to renew the objection to the instruction on flight as evidencing consciousness of guilt constituted ineffective assistance of counsel because it failed to preserve the issue for appellate review. Paper No. 1. As noted, supra, the post conviction court found that evidence of flight was adduced at trial. As such, the jury instruction was supported by the evidence and there was no error in trial counsel's failing to object to same. Paper No. 3, Ex. 15. The state court's factual findings are presumptively correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. 2254(e)(1). A review of the trial transcripts reveal that the post conviction court's factual findings are supported by the record. Additionally, as previously noted, the post conviction court properly applied the correct standard for reviewing claims of ineffective assistance of counsel. In light of the foregoing, this Court finds that the state court's decision rejecting Petitioner's claim that he was prejudiced by counsel's failure to renew his objection to the flight instruction is supported by the record and is not contrary to clearly established federal law, as determined by the United States Supreme Court, nor involves an unreasonable application of that law. The post conviction court's review of Petitioner's claim withstands scrutiny under 28 U.S.C. § 2254(d)(1) and (2).

## IV. Conclusion

In light of the foregoing,  the Court sees no reason to overturn Judge Turnbull's decision.

Accordingly,  this Petition for habeas corpus relief shall be denied and the case shall be dismissed

with prejudice.  A separate Order follows.


_____
/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

October 20, 2005